We'll start with 25-9523, Frontier Airlines v. Department of Homeland Security. Mr. Feinberg. Good morning, Your Honors. Counsel, may it please the Court, Adam Feinberg, on behalf of Petitioner Frontier Airlines. The main issue in this case is whether a user-fee statute authorizes TSA to obtain a fee when there is no user. It does not. The fee instructs TSA to impose a fee on passengers who take a trip in air transportation to pay for certain TSA costs of providing aviation security services, all of which are specific to airports and flights. In this case, the customers canceled their tickets before flying, and thus never became passengers, never took a trip, never engaged in air transportation, and never received any security services from TSA. Based on an argument Mr. Shaw and I had two weeks ago in the Fifth Circuit regarding essentially the same issue, I expect that he will tell you that TSA concedes that an individual who doesn't travel does not incur a fee. Instead, TSA tries to justify its position in this case based on two arguments. First, it says Frontier has no statutory authority to keep the funds at issue, but that's totally irrelevant. The question here has nothing to do with Frontier's statutory authority. It's whether TSA has statutory authority to keep the funds at issue, and it does not. Well, the statute says that Frontier is to remit collected fees at the end of each month. Why isn't that? Why doesn't that cover the procedure that they're advocating? Right, that's exactly TSA's second argument, but there's a whole host of reasons why that's not the case, and I'll sort of go through them. First, just starting with the text of the statute, that's not quite what the statute says. It says that a fee has to be remitted if there's an incurred fee, and I think TSA's argument is premised mainly on subsection E-1, which speaks of fees imposed and amounts collected under this section, but I think the only way to read that phrase is that the amounts need to be both a fee imposed and an amount collected under this section in order for it to be triggered, because otherwise it doesn't make any sense. That provision says that those things, fees imposed and amounts collected, must be given to the administrator of TSA. Well, a fee incurred that is not collected doesn't go to TSA, at least not in the first instance. It goes from the passenger to the airline. Does Frontier collect the fee when it sells the ticket to its customer, right? Correct. And then you put it in your TSA account? Is that fee then transmitted to TSA at the end of the month, even if the passenger hasn't flown yet? If that's correct, then does Frontier claw back the fee when a passenger doesn't fly or gets a travel credit by just offsetting a future deposit in its TSA account? Is that how it works? More or less, that's correct. The amount has to be paid to TSA at the end of the following month. This particular case, all but one of the fees were never given to TSA. So there probably will be some talk about the refund provision, but the refund provision is totally irrelevant because these amounts were never given to TSA because the passenger decided not to fly before the amounts were given to TSA. So at that point... Did Frontier collect the fund from the passenger who decided not to fly? Correct. Frontier initially collected that amount, but... And if they give it all back to the passenger, there's no problem, correct? Correct. TSA can say, why should Frontier be allowed to keep the $5.60 if the ticket is just totally canceled and there's no refund? Well, first of all, we do argue that there is a valid refund, but that's a separate issue. The reason is because TSA has no statutory authority to ever receive a fee if the passenger doesn't travel. Frontier, on the other hand, is governed by its contract of carriage with passengers, which explicitly says Frontier is entitled to those funds. So this would be a windfall to TSA because no one travels. TSA concedes that no fee has been incurred, yet TSA wants to keep the fee even though no passenger has traveled. Well, the language fees imposed and amounts collected has been troubling me, and it was not addressed in your brief. I thought you made a decent argument just now about what it means, but it seems... Excuse me, Judge Harris, can you please give the microphone? Yes, sir. He's been my senior for so many years in many different capacities, so I always do what Judge Kelly tells me to. I'll try to comply, sorry. Thank you. But it seems that the fee is imposed and amounts are collected when the ticket is sold. The fee is imposed at that point, amounts collected, and then those funds are payable to TSA, essentially. If the person doesn't travel, then Frontier, if it's before Frontier's remitting the amounts collected, then Frontier just doesn't send that on. But if it is sent that on, if it is sent on, then TSA ordinarily, I would hope they have the authority to refund it. But as with many intermediaries, they're not going to refund it to the intermediary unless the intermediary is going to refund it to the passenger. Why isn't that a natural reading of that section E1? Well, I think there's several problems with that. First of all, the fee isn't actually owed at the time the ticket is sold. TSA says that... We're talking about fee imposed. It's definitely been imposed at the time that the ticket is paid for, is it not? Well, I would argue no. It's not imposed until there's actually a passenger who engages in air transportation. It happens to be collected because TSA has told everybody, this is in their letter at AR3, that they want airlines to collect and remit based on when the ticket is sold. But that's not what the law says. We go over this a lot in our opening brief. There's no obligation to collect or remit until the passenger gets on the plane under the statutory scheme. But I think there's a bigger point, Judge Hartz, which is that there are lots of other provisions, particularly in the tax code, that have very similar provisions that say you have to collect and remit. The air transportation excise tax, that's an issue in a bunch of the cases the government cites as that. And if you look at the Cockey decision from the Seventh Circuit, the very first paragraph talks about these are the provisions that are at issue in the excise tax. And it says the airline must collect and remit. But then there's a separate provision in 6415A that commands the result that TSA wants in this case. And so under the reading you just described, Judge Hartz, that provision, 6415A, either that would be superfluous or the collect and remit obligations would be superfluous because you'd have the same result without section 6415A. And the Supreme Court in the Jefferson Electric Manufacturing case makes the same exact point. It says there's a statute that specifically says you have to give the money back to the customer. But before that, the collector could get a refund even without that. And so the general rule that TSA is arguing for, that you can never keep the money as the collector, doesn't exist unless there's a specific statutory provision that says that, as there is in a handful of provisions in the Internal Revenue Code. But there isn't one here. Let me ask a more general question to put this in perspective. What is the rationale for Frontier not to refund the entire ticket price when a flight is canceled? I'm not just talking about this fee, but why not refund all of it? Well, I think... So I buy a ticket, it's a $200 ticket, $5.60 tax here, whatever the amount is. You don't take the trip. Why doesn't Frontier, just as a matter of course, then refund the entire money? What's the rationale for not refunding the money? Well, it's just a business decision. They can strike whatever bargain they want with their customers and they're able to offer a cheaper fare up front if they offer a ticket that has more limited refund. There's no business reason. It's not because of the cost of processing this or something like that. They just decide, okay, we can... This is a way to get some extra money for Frontier. Maybe I'm misunderstanding your question. Do you mean for this particular fee or for just in general? For not refunding in full the price of the ticket when someone cancels. I assume it's because there are administrative expenses in doing this. Well, for sure there are. Maybe I misunderstood your question, Judge Hartz. And I think it's important to keep in mind too, so you have a ticket that is going to be refunded just to airfare via this credit. And so everything else has to follow suit or it's chaos. So there's not just the TSA fee, but there's a federal excise tax, some other fees like passenger facilities charges. If everything didn't follow suit, you might have a situation where Frontier had to send refunds to different people in different forms, which is administrative chaos. Take this for example. So TSA in its letter in 2002 says the money has to be refunded to the ticket purchaser. But in 2020, their guidance says it has to be refunded to the passenger. Well, what if those aren't the same person? Like I buy a ticket for my wife. It's totally unclear who TSA says the money should go to. Well, imagine then if the IRS, airport authorities who control the passenger facilities charges, customs, which has their own user fee, all had different rules and said, well, you have to refund in this form or that form. It's totally unworkable from the airline's perspective. What about the provision that says no portion of the fee collected under this section may be retained by the air carrier, et cetera, for the cost of collecting, handling, and remitting the fee, except for the interest accrued? Yeah, I think that's addressing a very specific scenario of you cannot keep Frontier a portion of the 560. And there's a lot of context for that. The passenger facility charge, for example, says airlines get to keep 11 cents out of the $4.50 for that particular fee. So all this is saying is if a fee is owed, you've got to give the whole 560. You can't keep a portion of it. But here, the fundamental problem for TSA is there was no fee incurred. And if there's no fee incurred, they are simply never entitled to obtain the funds. There's no statutory authority for that. And this is exactly what the Court of International Trade held in the similar Southwest case, that these administrative provisions about collection and remittance simply cannot override the general authority provision in subsection A that says when TSA is entitled to a fee. You've raised a kind of subtle issue. You talked about the fee incurred. E1 talks about the fee imposed. Is it imposed at the time that the ticket is sold? But it's not incurred until the passenger travels? Could that be how to read E1? I don't think so. Because you'd have the same problem that I mentioned before about E1. Because from the passenger's perspective, the passenger never owes anything to the TSA administrator. So I think you have to be talking about things that are both owed under the statute. And so subsection E2 talks about the collection obligation on the airline is for things that are incurred under the statute. That's the only thing that needs to be collected. And I don't know if you have any follow-up, but I'd prefer to reserve the rest of my time. Any questions, Judge Kelley? I have no further questions. Thank you. Thank you, Your Honor. Good morning, and may it please the Court. Whaley Shaw for TSA. I'd like to start with the statutory text, and specifically the provisions in E1, E3, and G. I think the way that Mr. Feinberg would read E1 would completely make the amounts collected provision superfluous. But I think the more natural reading of that provision is it actually does mean all amounts collected. And that's consistent with the provision in G. And the reason is that it is, as Congress recognized specifically and expressly in subsection G, it is possible for a fee to be properly collected and yet no longer owed at some later point in time. And so what E1 says is that even those amounts must be remitted to TSA. But then Congress also enacted subsection G to govern how those overcollected or overpaid amounts should be dealt with. And I would also specifically note that in contrast to Mr. Feinberg's argument, subsection G actually refers to all amounts paid, fees paid in excess, which indicates that the trigger for subsection G is not the remittance of the fee from the airline to TSA, but rather the payment of the fee by the passenger. So as soon as the passenger pays the fee, TSA has the authority to refund it. And that also makes sense because the statute and regulations make clear that the fees that the airline collects are held in trust for TSA and the airline has no legal or equitable interest in those funds. So is TSA refunding the fee to non-travelers? TSA has designed a refund procedure that is designed to accomplish exactly that, which is that it directs airlines to refund the fee to non-traveling passengers and then it reimburses the airlines for giving that refund. Now, the problem here is not that TSA does not want to refund those passengers. The problem is that Frontier was supposed to do that and collect the money back from TSA. Well, if that's the economic reality of it, why not let Frontier just hold on to the fee and let's see if the customer travels. If he doesn't travel, TSA doesn't need to then refund money back to the airline. That seems like a completely wasteful step. And then TSA doesn't have to keep track of who's going through the turnstile at airport security. So let me be clear. That does happen and it can be the case that the fee never actually reaches TSA's accounts but is refunded directly from Frontier to the passenger. And that, again, is consistent with subsection G because as I was saying, the TSA's authority to refund the fee starts upon payment of the fee by the passenger. If Frontier has collected the fee but has not remitted it to TSA, TSA can nonetheless authorize a refund pursuant to the refund procedure that is established. And that allows Frontier to refund that fee to the passenger and not pay it to TSA. How is that consistent with E3? It says a fee collected shall be remitted on the last day of each calendar month by the carrier collecting the fee. Right. There's no exception there. Right. There is no statutory exception. I think that shows why Frontier's position is wrong. There is no exception. But what you're saying is that that position isn't what I'm getting at. I probably didn't phrase it well. E3 seems to not allow what you just described as the procedure used. If a passenger pays the fee, cancels the trip, and then the time for remittance arises, you're saying that Frontier doesn't have to pay that fee to TSA. But E3 seems to say it does require it to pay. I entirely agree with your honor that E1 and E3 contemplate a one-way flow of funds to TSA as soon as a fee is collected. But there is a single statutory exception to that one-way flow, which is subsection G. Again, as I was saying, subsection G says that TSA may refund any fee paid by mistake or any amount paid in excess of that required. So as soon as the fee is paid, TSA's authority to refund that fee is triggered under subsection G. But there's no refund in the process that has been described, as I understand it. There's no refund because there's no payment made to TSA if the passenger cancels the trip before the remittance is required. So that's not a refund process. Frontier never pays the money. So there's never a refund by TSA. TSA, I think that's clarifying by the regulations that TSA has enacted pursuant to the statute. Pursuant to or contrary to? Pursuant to because subsection G expressly authorizes TSA to create a refund procedure and to enact regulations to implement the fee. And what those regulations specify is that that as soon as a fee is collected, that fee is held in trust for TSA. So it's TSA's money as soon as it's been collected. And that airlines have no equitable or legal interest in those fees. So that money belongs to TSA upon collection. And then TSA can authorize the refund of that fee pursuant to subsection G, entirely consistent with the statute. But even if Your Honor... I don't see why that's a refund if the money is never paid to TSA. I mean, if Your Honor disagrees, I mean, then it certainly could be, there could be a scheme in which, you know, airlines always have to pay the fee that they don't have the option to sort of return this fee in advance. And they'll always pay the fee and then refund it later and be reimbursed by TSA. I mean, the functional result of that scheme would be entirely the same. No matter what happens, it's always the case that if the passenger doesn't travel, the airline frontier should issue a refund to the passenger. And then at some point, you know, there's a question about, you know, does it have to also pay that fee in the next monthly payment? And then when can it offset that fee? And those are issues that we can argue about. It just seems like an accounting exercise. And, you know, I think Judge Hartz makes a good point. But what we're seeking, the economic reality is that TSA should only get fees for travelers, right? And what's offended TSA here is that Frontier and Southwest and maybe other airlines are getting a bit of a windfall for canceled trips.  Is that what's driving this agency action? It's clear that under the statutory and regulatory scheme, the only two places that the fee can end up are with TSA or with the passenger. Airlines serve only as a collection agent and conduit of funds, both in collecting the fee and in refunding it. So what's happening here is that airlines are sort of taking advantage of their role in that process to keep that fee for themselves. And that's entirely inconsistent with the scheme. What happens with other airlines like United or American that don't have enforcement actions? I don't know specifically about any individual airline. But what I do understand from TSA is that there are many airlines that do, in fact, comply with all of their obligations under the refund scheme and against, you know, against which TSA has not sought recoveries. Is there anything in the record or in the public domain that we could look and see what TSA thinks the optimal procedure is? Well, in terms of what the optimal procedure is, that's laid out in the 2002 and the 2020 guidance. And for an indication of what the airlines do, we don't obviously don't have extensive evidence in the record about other airlines' practices. But TSA does expressly note in a footnote that we cite in our brief that other airlines do comply with their obligations in this respect. And that is also what I understand from my discussions with TSA. And ultimately, the point of this scheme, this refund scheme, is to ensure that the passenger who actually pays the fee gets the refund. And that only works if the airline is not allowed to keep the fee because that gives them an incentive to refund the fee to the passenger for their goodwill. So the airlines are refunding the fee except in particular circumstances that they've contracted with the passenger to keep the fee in certain circumstances. And the passenger wants the credit and the contract with the customer allows that. Why isn't that? Why would TSA care about that private transaction? Because Congress authorized TSA to establish a procedure for refunding the fee in subsection G of the statute. TSA has, in fact, created such a procedure. And so it's not a matter for private contract for Frontier to require passengers to agree to some other method of refunding the one. The statute prohibits private contracting. It doesn't prohibit private contracting, but it does. On the fee it does, under your argument. It does not allow parties to establish their own contractual refund procedure that's different from the one that Congress authorized TSA to establish under subsection 4. And I would just point out the extreme consequences of that position because under Frontier's theory, you know, for example, every theory, I'm sorry, every airline could just require in its contract of carriage that TSA, that passengers give up their right to their security refund, security fee refund in advance. And so no passenger would ever get a security refund. And according to Frontier, that would be entirely consistent with the statute. That cannot be right. That would be a complete end run around the refund scheme. It would, and if the same theory were followed in other contexts. Why would it be an end run? There would still be instances where there are errors that require a refund, right? Right, and so as I understand it, what Frontier is saying is that they can require passengers through their contract of carriage to agree up front to give up any security refund, security fee refund that they are entitled to from TSA. And so there could very well be no refund to any passenger because, you know, every contract of carriage would just say, the airline gets to keep the refund. We don't give it to the passenger. Or there could be other variations on it, obviously. They could place it in a travel credit for 90 days, for 60 days, for 30 days, for one day. And then upon expiration, collect it. Or they can say they're applying it to some other fee. But ultimately, there are many contractual ways that they could set this up where the ultimate result is that the airline gets to keep the fee and not the passenger. And that is the problem. We know in this case that no refund was ultimately effectuated under subsection G because the money in this case, the money that was collected for the fee that was expressly labeled as a line item, the 9-11 security fee, ultimately ended up in Frontier's books as revenue and not in the pockets of its passengers. And so given that, there is no reason why TSA should recognize Frontier as having made a valid refund and therefore provide Frontier the refund that it seeks. Frontier... Don't you think the 90-day, the right to use the money within 90 days has some economic value? The way I would understand it is that when Frontier provides a travel credit, it doesn't actually give the passenger the money. It holds onto the money in its own accounts. But it gives the passenger some beneficial interest in that money in the sense that the passenger can use that credit amount to purchase future travel. But after 90 days, Frontier wipes out that beneficial interest. It takes the money out of the travel. But when it creates that beneficial interest, it says you can use this for 90 days, that has some value, does it not? It might have some value. That doesn't make it a valid refund. So for example, if I... It's a partial refund then. Maybe it's not worth as much as having the $5.15 in cash, but it's worth something. And that value should not be reimbursed to the airline? No, because Frontier ultimately got 100% of the money back. It took away that beneficial interest and it recognized 100% of the amount. You don't believe in the time value of money. I, you know, I'm not sure that that bears on this question. I mean, it would be like if Frontier sent a check to someone as a refund and then before the person could cash the check, that Frontier sent, you know, told its bank to stop payment on the check. And so therefore, ultimately, the passenger was never... What if Frontier sends a check and after 90 days it can't be negotiated or after a year it can't be negotiated? You've seen those restrictions on checks. Right. Would that mean that Frontier... I think the force of that hypothetical is because in most cases, people treat sending a check as basically the equivalent of cash. But the expiring travel credits here are not anything like that. They can only be used within 90 days for one very limited purpose. So if that would be a refund, for example, I assume that Frontier would not agree to accept, if they prevail in this case, to accept payment from the government in the form of credits good for admission to national parks for 90 days. I see that my time is up. Maybe I could just... I had another question. I was just wondering if... Let's say Frontier sold the ticket, but there was a stipulation that we're going to have a surcharge of $5.60 when we sell you this ticket. But that we're not... It's only going to be triggered when you get your ticket scanned at the gate at the airport, which means you've gone through airport security. Could they do something like that? I think... Because the collection, the effective collection is really at the gate, and there would never be a possibility for a refund. I think that that is potentially inconsistent with the statute, which contemplates that the fee will be collected by the carrier selling the ticket, and also with the regulations which expressly provide that the fee shall be based on the itinerary at the time that the ticket is sold. So I think, at least based on the current regulatory regime, that would not be possible. And if I could just finish my thought, it would be odd if... I assume Frontier would not accept a refund in the form of a credit good for admission to national parks within one year, because that's very difficult to use. And if that's not a refund, then I don't think that the refunds that Frontier offered here are refunds either. Thank you. Judge Kelly, any questions? Judge Kelly? Thank you. Thank you. I think you have... Let's make it two minutes since Eppley went over a little bit. Thank you, Your Honors. I just want to make three quick points. First of all, on the point you guys were just discussing about refunds, travel credits are plainly refunds in our view. The parties contracted that they would be valid refunds. That's explicit in the contract of carriage. The 11th Circuit decision in CAVR says you look at the party's contract in terms of what's sufficient for a refund. The Department of Transportation regulations say travel credits are refunds, and the IRS treats credits as refunds in exactly this air transportation context. So we win just on our secondary argument that a valid refund has been given. Moving back to the first argument, the statutory authority argument, there are two points I want to make about that. First, just a general point that any doubts should be resolved against the government. This is a long-standing principle that has applied for as long as our tax code has existed, and I would cite, for example, U.S. v. Merriam, 263 U.S. at 188. And so to the extent there's any doubt about how you read the sections in E or G, the doubts should go in Frontier's favor, not in the government's favor. Should we treat the expiring travel shells differently than the other refunds? Do you mean the three instances where there was a cancel fee that ate up the whole credit? Yeah. No, because I think that's a valid refund as well. That's exactly what happened in the United Airlines case, and that's exactly what the Contract of Carriage says. It says we can offset, and that counts as a refund. It explicitly says you can get your refund in the form of a satisfied cancellation fee. And then I wanted to go back to a point, Judge Hartz, that you were making about this fundamental inconsistency in the government's position. They say sometimes a collected fee doesn't have to be paid, and then they put some conditions on it, if you gave it back to the passenger, and then they try to justify that by saying, well, we give it back under this procedure under subsection G. Well, as Mr. Shaw said, subsection G says may. So under their theory, they do but don't have to give the money back if the passenger doesn't travel and there has been a refund. So there's this hugely troubling situation here where if TSA wanted to change its mind, it could say, we're withdrawing this letter. We get to keep the fee even if the passenger doesn't travel and even if, Frontier, you gave the money back to the passenger. Wrap up very quickly. Your time has expired. If you can finish your thought briefly. I was just going to say the same thing applies for the utilized travel credits. Somebody gets a travel credit and then uses it later, TSA would get two fees if they wanted to. Thank you, Your Honors. Thank you, Counsel. Case is submitted. Counsel are excused.